Marvin, J.
The case of Thomas P. Westropp, as administrator of the estate of Catherine Westropp,deceased,is brought here upon a petition in error seeking to reverse the judgment of the court of common pleas. The case was brought by Thomas P. Westropp in that court, by filing a petition which sets forth that something like eleven years before the death of Catherine Westropp, who was his mother, he put into her hands the sum of five hundred ($500.00) dollars, with the agreement with her that she should make use of it, as she might need, during the period of her life, and that upon her death, it, or such part of it as should remain unexpended, should be paid back to him; and the petition further alleges that the entire amount was left unexpended at the death of his mother; that he filed his claim with the administrator of her estate, and that the same was rejected, and so he brought this suit in the court of common pleas for judgment for the amount of said claim.
To his petition a demurrer was interposed, the ground of which was, that the promise which was claimed to have been made by the mother to return the property, was within the statute of frauds; that it was a contract on her part, not to be performed within a year from the time it was made; and the court of oommon 'pleas sustained the demurrer, and, without further pleading, judgment was entered for the defendant.
So the question here is whether or not the court of common pleas erred in sustaining the demurrer.
It was urged that the mother was likely to live, in any event did live, eleven years after this money was put into her hands; and it is urged to us that even if she died the *246 next day, the statute allows the administrator eighteen months within which to pay any claim owed by the deceased; ■and that, therefore, the contract could not be performed within a year; and to this we think it sufficient to say that, if by the terms of the contract the performance was to be at .such a time as to take the case out of the statute, the fact that the law allows eighteen months to the administrator to pay the debts of the estate, would not have the effect to bring it within the statute.
It is further urged that without reference to the provisions of law already mentioned,the caséis still within the statute, •and we are cited to a case in the 5th of Wallace, at page 580,- — -the case of Packett Company v. Sickles, as sustaining the position of the defendant, that this contract was within the statute of frauds. That is a case where the owners ■of a steam packet undertook and agreed to pay a certain amount per year to the owners of a patent, for the use of a patented device for a period of twelve years, provided the boat on which this device was to be used should so long last.And it is urged that there was a contract that might be fully performed within a year because the boat might not last a year, and if the boat should not last a year, the contract would be at an end. This contract was held to be within the -statute. The proposition that this case is like the one at bar, and that reasons which apply to the one, also apply to the other, is not, we think, well taken.
An examination of the cases in which this subject is treated, will show that there is a distinction made all the time between those cases where the contract is to run more than a year, or rather is not to be performed within a year, but fixes the time within which the contract is to be performed, but liable to be terminated by a contingent event happening within a year; — some of the cases of this kind are held to be within the statute of frauds, and that is the doctrine on which this case in the 5th of Wallace, to which I *247 have referred, is held. In that case there wag a contract for twelve'years;- it was within' the contemplation of th'éparties when they'made the contract, that it Was to’continue-for twelve years; it is' liable, it is true,upon a certain conltingéncy to be terminated Within a year. It was hot á contract that could not bé fully performed within a yéar,though it'might be terminated within.that time. Herice this was-held to be within the statute of frauds. ' 1
We are cited to Parsons on Contracts; Vol. 3, Chapter 5',' star page 30, note g. That note is a very full one, and has-a large number of cases, and the distinction I have undertaken to intimate seems .to run through all of them so far as-I .have examined them, and that is, where the contract is. for a given period of-time more than a year, and its ending; within that time depends upon the happening of some contingent event, in most, if not all of those cases the contracts-are held to be within the statute of frauds, because the contract was to continue for more than a year; but in none of: those cases, so far as I have found, is it held to be within* the statute where the contract is to be terminated upon a¡ contingency, where there is no time fixed for the contráct to run, only that it is to end with the happening of some-uncertain event which may happen within a year.
The opinion in the case of Blakeney v. Doods, 30th Ohio St. 350, cites a very large number of cases also cited in'the note in Parsons on 'Contracts, to which attention has-been called, and the fourth clause of the syllabus in thaP case reads: . ■'
“Although the parties may be longer than a year in the-performance of the contract, still if that performance' may be completed within a year, and -such performance is entirely in accordance with the intention and understanding.; of the parties, such contract is not within the;statute, and-need not be in writing in order to maintain an action upon.. it.”
*248 A large number of authorities are cited in this case, and the whole matter is gone over at great length in the case of Harris v. Porter (2nd Harrington, page 227,) which is one of the cases cited in Parsons, and which is cited here. There was a verbal contract in this case to carry mails from 1832 to 1835; the plaintiff endeavored to claim that the contract was not within the statute because it was within the power of the Postmaster General to put an end to it at any time. The court say:
“This was a contract which could not possibly be performed within one year. By its terms it was to continue four years; though it might be annulled by the Postmaster General within the year, still it falls within the class of cases as an agreement which, according to its terms, is not to be performed within a year.”
Now, we think that is like the case in the 5th of Wallace. It might be annulled within a year, but in order to be performed, it would take more than a year. The court in this same case, quoted from the opinion of a case in the 20th Maine, page 119, and quoting from the syllabus of that case says:
“To bring a case within the statute of frauds, it must have been^expressly stipulated by the parties, or appear to have been clearly understood by them upon a reasonable construction of the contract, that the contract was not to be performed within a year.”
Then they cite this case in the 5th of Wallace, which I have already spoken of, following which this language is used by Judge Wright in the opinion from which I am reading:
“Notwithstanding this case and others cited, we think Parsons states the proper rule: ‘If the executory promise be capable of entire performance within one year, it is not within the statute.’ ”
Besides the authorities referred to in the case last mentioned, and those cited in the note in Parsons already *249 spoken of, the matter is discussed to the same effect in Browne on the Statute of Frauds, commencing at sec. 255 and including sec. 279. also Wood on Statute of Frauds, beginning at sec. 271, and following.
The case in the 20th Maine, at page 119, of Herrin v. Butters, was one in which they held the contract to be within the statute of frauds;, but that case was where a contract was made, by which a man by the name of Isaac Shaw had.agreed, in writing, with one Asa G. Butters, to clear off eleven acres of land, and also to seed down one acre in the spring of 1833, — the contract having been made on the 21st of March of that year, — and to seed down another acre in the spring of 1834; and it was agreed that he should have all the crops that should be raised on the eleven acres, except the two acres he was to seed down, for three years; to pay him for thus clearing off the ground,and for seeding the two acres. Subsequently Shaw made a contract with one Herrin, and that was made, — we do not know the exact date, — but it was made before May Í0th, 1833, by which Shaw agreed with Herrin, in that Herrin should do half the work that he (Shaw) had agreed to do, and that he (Herrin) should have one-half of the benefits of this contract which Shaw would otherwise have had. On the 10th of May, 1833, Herrin made a contract with Charles Butters, Jr., — not the man with whom the original contract was made, — but another man by the name of Butters, that he should take the contract off his hands. The clearing was not done, and suit was brought against this last man, Charles Butters, Jr., for failure to perform his contract. The court held that though it would have been possible for this contract of clearing off the land, to have been performed within one year, it was not within the contemplation of the parties that they should do it within the year. And it was in that very case, that the court said: “To bring the case within the statute of frauds, *250 it must have been expressly stipulated by the parties, or it. must upon a reasonable construction of’ their contract appear to have been undérsfcood' by them that the agreement, was not to be performed within the ye:ar.” But they say in that case, it was certainly understood that the contract, was not tó be performed within the year: ' The first agreémen't in that case wás made March 21st, 1833, and the one-that followed and was sought to be enforced was made on. the 10th day of May, 1833; and the court state clearly that-it was not within the contemplation of the parties that it~ should be preformed within a year,and say, that though that, is so, they make no change in the- rules laid down as above-quoted. But in these cases cited, there are several cases» where there is a contingency in the contract, where the-thing that should bring about the right of the party to enforce the promise depends upon the death of one. And in* each of such cases, it is held that the contract is noi within' the statute of frauds.
Burke & Ingersoll, for Plaintiff in Errror
Foran & Daioley, for Defendant in Error.
We think the court below was clearly in error in sustaining this demurrer and holding that the contract set out in the petition is within the statute of frauds. The judgmentof the court below is reversed, and the case remanded to that, court for further proceedings.